STATE of Iowa, Appellee,

v.

Charles A. OGILVIE, Appellant.

No. 65157.

Supreme Court of Iowa.

Sept. 23, 1981.

Rehearing Denied Oct. 15, 1981.

Jon M. Kinnamon of Kinnamon, Kinnamon, Russo & Meyer, Cedar Rapids, for appellant.

Thomas J. Miller, Atty. Gen., Julie Pottorff, Asst. Atty. Gen., and Ralph Potter, Asst. County Atty., for appellee.

Considered by REYNOLDSON, C. J., and LeGRAND, HARRIS, McCORMICK, and ALLBEE, JJ.

McCORMICK, Justice.

Defendant Charles A. Ogilvie appeals from his conviction by jury and sentence for third-degree sexual abuse in violation of section 709.4, The Code. He contends the trial court erred in sustaining an objection to his inquiry into prior sexual activity of the prosecutrix, in overruling his objection to alleged hearsay testimony by police officers, and in overruling his objection to prosecution efforts to "create evidence." He also contends he was denied effective assistance of counsel. Because we find no merit in his contentions, we affirm the trial court.

The charge arose from an incident which occurred in the early morning of January 30, 1980, when defendant visited Shirley Ann Knopp in her trailer home. Knopp asserted that after a struggle defendant forced her to have sexual intercourse with him. Defendant testified that he fondled and caressed Knopp with her consent but left without engaging in sexual intercourse with her.

I. *The inquiry into prior sexual conduct.* With defense counsel's knowledge, the State conducted various pretrial laboratory tests of physical evidence. One test compared a semen stain on Knopp's bed sheet with defendant's blood type. The test showed the semen contained evidence of blood type A, whereas defendant has blood type O.

The State filed the laboratory test results with the clerk of court on March 25, 1980. Trial commenced March 31, 1980. The first witness was Knopp who testified on April 1, 1980.

During direct examination she said defendant told her during the course of the attack that he had ejaculated. On cross-examination she was asked how often she did the laundry and when she had put the sheet on the bed. She said she did the laundry weekly and had put the sheet on the bed two or three days before the incident with defendant. Defense counsel then asked whether she had "any other sexual intercourse in the prior two, three, four days." The State objected to the question on the ground that the inquiry violated Iowa R.Crim.P. 20(5). The trial court sustained the State's objection, and defendant contends the ruling was erroneous.

Iowa R.Crim.P. 20(5) provides:

In prosecutions for the crime of sexual abuse, evidence of the prosecuting witness' previous sexual conduct shall not be admitted, nor reference made thereto in the presence of the jury, except as provided herein. Evidence of the prosecuting witness' previous sexual conduct shall be admissible upon appropriate order of the court if the defendant shall make application to the court not later than five days before trial.

The court shall conduct a hearing in camera as to the relevancy of such evidence of previous sexual conduct, and shall limit the questioning and control the admission and exclusion of evidence upon trial.

In no event shall such evidence of previous sexual conduct of the prosecuting witness committed more than one year prior to the date of the alleged crime be admissible upon the trial, except previous sexual conduct with the defendant. Nothing in this rule shall limit the right of either the state or the accused to impeach credibility by the showing of prior felony convictions which are otherwise admissible.

Like Fed.R.Evid. 412 and legislation in at least twenty-nine states, rule 20(5) makes evidence of past sexual conduct of a sexual abuse victim inadmissible, with certain exceptions. *See* 2 J. Weinstein & M. Berger, Weinstein's Evidence ¶ 412[01] (1980).

The State contends the trial court ruling was correct because defendant did not make a timely pretrial application for permission to make the challenged inquiry. In seeking reversal, defendant alleges the rule does not apply because he was not trying to impugn Knopp's character but only to confront real evidence. He argues that the court's ruling denied his right of confrontation under U.S.Const. amend. VI and XIV.

The record does not show defendant urged his constitutional argument in the trial court. Because of his failure to preserve error, we do not consider it.

■ No dispute exists that defendant failed to make a timely application under rule 20(5). He did not attempt to show he received the test results too late to comply with the rule. Nor, if he received the results within the five-day period, did he try to show he took any steps to make an application when he received them. Therefore we are not required to decide whether he might have been entitled to relief by continuance or otherwise if he learned of the results too late to comply with the rule. The only question presented is whether the rule applies when a defendant seeks to inquire into the prior sexual conduct of a sexual abuse victim in an effort to account for the presence of semen.

Nothing in the language of the rule purports to limit its reach as urged by defendant. Defendant does not cite any authority in support of his contention, nor have we found any. Moreover, the policy reasons underlying provisions of this kind do not show it is limited as he alleges.

■ One purpose of rape shield laws is to protect the privacy of victims. Another is to encourage the reporting and prosecuting of sex offenses. *See* Note, *Indiana's Rape Shield Law: Conflict with the Confrontation Clause?*, 9 Ind.L.Rev. 418 (1976). A third reason is to prevent time-consuming and distracting inquiry into collateral matters. *See, e. g., State ex rel. Pope v. Superior Court*, 113 Ariz. 22, 545 P.2d 946, 953 (1976); *McLean v. United States*, 377 A.2d 74, 77 (D.C.App.1977); *State v. Geer*, 13 Wash.App. 71, 533 P.2d 389, 391 (1975).

A victim's privacy will be invaded as much when the inquiry is motivated by a desire to confront real evidence as when it is motivated by a desire to impugn her character. The result does not depend on the motive for the inquiry. Defendant's argument addresses the merits of his inquiry rather than the applicability of the rule. It is a relevancy argument. *See State v. McDaniel*, 204 N.W.2d 627, 629–30 (Iowa 1973) (error to refuse to admit evidence accounting for presence of sperm because of intercourse with another person); *see also* Fed.R.Evid. 412(b)(2)(A) (evidence of past sexual behavior admissible to show accused was not the source of semen provided the accused makes a written motion to offer the evidence not less than fifteen days before trial).

We do not reach the relevancy issue in the present case. Rather, we sustain the trial court ruling because we hold rule 20(5) was applicable and defendant admittedly did not comply with it.

II. *The hearsay issue.* After defendant left the trailer, Knopp made phone calls to her grandmother, the police, and her mother. She was talking to her mother when two police officers arrived. They questioned her about the incident. At trial, the officers were permitted to testify over hearsay objections to statements made by Knopp in which she described the incident and identified her assailant as "Chuck."

■ When witnesses testify to the victim's complaint of the act, the testimony is not hearsay. The fact of the complaint is admissible as corroboration of the complainant's testimony. *State v. Stevens*, 289 N.W.2d 592, 595 (Iowa 1980). This is of course true whether or not an effort has been made to impeach the complainant.

■ Statements which go beyond describing the nature of the act and the time and place of its occurrence may be hearsay. Specifically, statements which identify the accused are hearsay and inadmissible unless they come within an exception to the hearsay rule. *Id.* at 595–96.

The parties argue about whether the statements come within the "res gestae" exception to the hearsay rule. The term "res gestae" has been applied to testimony concerning events as well as hearsay and nonhearsay statements. *See State v. Oppedal*, 232 N.W.2d 517, 521 (Iowa 1975). We have previously indicated a preference for using more precise and accurate labels for hearsay exceptions. *See State v. Fitz*, 265 N.W.2d 896, 902–03 (Iowa 1978). In its use to identify a category of hearsay exceptions, the "res gestae" term is an inexact anachronism. *See* C. McCormick, Evidence § 288 (2d ed. E. Cleary 1972). Because of its myriad applications, it is too likely to confuse analysis. *See* Note, *Res Gestae: A Synonym for Confusion*, 20 Baylor L.Rev. 229 (1968); Slough, *Spontaneous Statements and State of Mind*, 46 Iowa L.Rev. 224 (1961); Morgan, *A Suggested Classification of Utterances as Res Gestae*, 31 Yale L.J. 229 (1922); 6 J. Wigmore, Evidence § 1767 (Chadbourn rev. 1976).

In the present situation the State actually relies on the concept expressed in the specific exception for excited utterances. *See Stevens*, 289 N.W.2d at 596 ("This exception to the hearsay rule applies generally in criminal prosecutions when the statement is made under the influence of the excitement of the incident rather than on reflection or deliberation."). The exception is defined in Fed.R.Evid. 803(2): "A statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." This definition conforms with the meaning we have given the exception, and we adopt it. We now reject use of "res gestae" terminology to describe a situation which comes within the excited utterance exception.

The trial court has discretion to determine whether a statement is induced by stress of excitement caused by the startling event or condition. *See State v. Paulsen*, 265 N.W.2d 581, 586 (Iowa 1978). In the present case, the officers said Knopp was still upset when they interviewed her. The interview occurred approximately one half hour after the incident. She had spent the intervening time calling others to tell them of the incident. The fact that Knopp's statements were made in response to questions is a factor which tends to negate spontaneity but is not conclusive. *See* 4 D. Louisell & C. Mueller, Federal Evidence § 439 at 504 (1980). Statements were held to be admissible in similar circumstances in *State v. Swanson*, 228 N.W.2d 101 (Iowa 1975). Under the record here, we hold that the trial court did not abuse its discretion in admitting evidence of her statements implicating defendant under the excited utterance exception.

III. *The State's alleged creation of evidence.* Because defendant had type O blood, the State sought to explain why the semen stain on the sheet would disclose type A blood. Knopp has type A blood. If she were a "secretor," a person who secretes evidence of blood type in body fluids, her fluids may have combined with defendant's semen to produce a type A stain. In an effort to prove Knopp was a secretor, the State introduced evidence that cigarettes found in the trailer which Knopp said she smoked had been smoked by a type A secretor. The State's problem was that it also had a saliva test run on Knopp which showed she was not a secretor. This led to the controversy which defendant alleges constitutes "creating evidence."

The prosecutor asked the State's expert witness if the results of the cigarette test would raise a question regarding the validity of the saliva test. Without objection by defendant, the witness said it would. Later the prosecutor asked the witness if he would have any basis for saying Knopp was a nonsecretor if the saliva test were defective. Over defendant's objection, he said he would not. The defendant's objection was that the inquiry was inconsistent with the evidence offered by the State that the saliva test was valid. We limit our consideration of this issue to the point urged by defendant in his trial court objection.

We do not think reversible error occurred. The State had a right to suggest an explanation for the inconsistency in its

 

evidence. Neither the jury nor the State was obliged to take all evidence presented by State witnesses as a verity. *See State v. Trost*, 244 N.W.2d 556; 559–60 (Iowa 1976).

The court did not err in overruling defendant's objection.

IV. *Ineffectiveness of counsel.* Defendant contends his trial counsel was ineffective on two grounds relating to submission of lesser included offenses. One ground was the failure of the attorney to request an instruction on the lesser offense of assault with intent to commit a felony in violation of section 708.3, The Code. The other was a failure to object to alleged errors in the instruction which was given on the lesser included offense of simple assault in violation of section 708.1, The Code.

Because we believe the present record is sufficient to show defendant's contention is without merit, we will address it on its merits. *See State v. Poyner*, 306 N.W.2d 716, 719 (Iowa 1981).

At the time this case was tried, this court had not decided that assault while participating in a felony is a lesser included offense of sexual abuse. *See State v. Johnson*, 291 N.W.2d 6 (Iowa 1980). This holding was not so certain that competent counsel must be held to have foreseen it. *See Long v. Brewer*, 253 N.W.2d 549, 556 (Iowa 1977).

The instruction on simple assault was based on the statute defining the offense. The change advocated by defendant now would have modified the instruction to make it a definition of battery. The main problem with defendant's present objection to the instruction is that Iowa statutes never have and do not now recognize the offense of battery as a separate offense. *See* 4 J. Yeager and R. Carlson, Iowa Practice: Criminal Law and Procedure § 172 (1979). In addition, we do not believe defendant could have been prejudiced by language in the instruction he alleges was superfluous or by the omission of statutory language he alleges should have been included which, under the evidence in this case, was also superfluous.

Defendant has not shown that trial counsel's representation was below the range of normal competency.

No reversible error has been shown.

AFFIRMED.